# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

|  |  |
|---|---|
| ) | Civil Action No. 1:24-cv-2208 |
| ) | |
| U.S. Equal Employment Opportunity Commission ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | **COMPLAINT** |
| v. ) | |
| ) | |
| Alto Experience, Inc. ) | |
| ) | |
| Defendant ) | JURY TRIAL DEMAND |
| ) | |
| ) | |

## I.   NATURE OF THE ACTION

This is an action brought under Title I of the Americans with Disabilities Act of 1990, as amended ("ADA"), and Title I of the Civil Rights Act of 1991, to correct unlawful discrimination on the basis of disability and to provide appropriate relief to Charging Party Abenezer Lula ("Lula" or "Charging Party"), and to similarly aggrieved qualified individuals with disabilities. Defendant Alto Experience, Inc., ("Alto" or "Defendant"), employs Personal Drivers to drive passengers in its fleet of vehicles. Despite significant participation by deaf drivers in the rideshare industry, and the ready availability of technological accommodations, Alto has refused to employ deaf individuals as Personal Drivers. It has also denied reasonable accommodations to deaf and hard-of-hearing individuals, and it has steered them into less desirable car washing positions. Alto has discriminated against at least 20 deaf and hard-of-hearing individuals in violation of the ADA, and this discrimination is ongoing.

## II.    JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706 of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e-5, and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      From at least January 2022 until at least January 2024, Defendant has conducted business operations out of a location in Alexandria, Virginia, and has discriminated against deaf individuals who sought employment as a Personal Driver at that location.

3.      Venue is proper in the United States District Court for the Eastern District of Virginia, as employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of Virginia. *See* 42 U.S.C. § 12117(a), incorporating 42 U.S.C. § 2000e-5(f)(3).

## III.    PARTIES

4.      Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC") is the agency of the United States of America charged with the administration, interpretation, and enforcement of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706 of Title VII, 42 U.S.C. § 2000e-5, and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

5.      Alto is a Texas corporation with current operations in Texas, Florida, and California, and prior operations in Northern Virginia.

6.      In each calendar year 2022 through the present, Defendant continuously employed more than 500 employees.

7.    At all relevant times, Alto has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701 (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g), (h).

8.    At all relevant times, Alto has been a "covered entity" under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

### IV.    CONDITIONS PRECEDENT

9.    All conditions precedent to the institution of this lawsuit have been fulfilled.

10.    More than thirty days prior to the institution of this lawsuit, Charging Party Lula filed a Charge of Discrimination with the EEOC alleging violations of the ADA by Alto.

11.    On April 26, 2024, the EEOC issued to Defendant a Letter of Determination finding, among other things, reasonable cause to believe that Defendant had violated the ADA by discriminating against Lula because of his disability, including by denying him reasonable accommodations and failing to hire him.

12.    The April 26, 2024, Letter of Determination also found reasonable cause to believe that Defendant had violated the ADA by denying reasonable accommodations, failing to hire, segregating or limiting, and unlawfully discharging a class of deaf and hard-of-hearing Personal Driver applicants and employees on the basis of their disability.

13.    After issuing its Letter of Determination, the EEOC engaged in communications with Defendant to provide it the opportunity to remedy the unlawful employment practices described the Letter of Determination described above.

14.    The EEOC and Defendant were unable to reach agreement through the conciliation process.

3

15.     On July 12, 2024, the EEOC issued to Defendant a Notice of Conciliation Failure advising it that the EEOC was unable to secure from Defendant a conciliation agreement acceptable to the EEOC.

## V.     STATEMENT OF CLAIMS

**Alto Requires Personal Drivers to Be Able to Hear, and It Will Not Accommodate Qualified Individuals with Hearing Disabilities in that Position.**

16.     Alto employs Personal Drivers to pick up passengers and drive them to their destinations in a company vehicle.

17.     Personal Drivers use applications on Alto devices for navigation.

18.     Passengers and Personal Drivers can communicate by text message through Alto's proprietary application.

19.     Personal Drivers generally communicate with dispatch once or twice per shift.

20.     Communications with dispatch are generally brief, with the average verbal communication lasting less than 30 seconds.

21.     Dispatch and Personal Drivers communicate through a third-party walkie talkie application.

22.     Alto has turned off the text message functionality on its walkie talkie application.

23.     As stated in its position statement to the EEOC, Alto requires Personal Drivers to "[be] able to able to hear instructions from its dispatch team" ("the Hearing Requirement").

24.     The Hearing Requirement is contained in the Job Description for the Personal Driver position.

25.     Alto includes the Hearing Requirement in its job postings for the Personal Driver position.

26.    Alto refuses to accommodate deaf individuals in the Personal Driver position.

27.    Reasonable accommodations exist that would allow deaf individuals to communicate with Alto's dispatch. These include, but are not limited to, enabling text message functionality when pulled over, and allowing video relay service ("VRS") or videophone calls with dispatch when pulled over.

28.    Reasonable accommodations exist that would allow deaf individuals to perform all essential functions of the Personal Driver position.

29.    Alto also insists that Personal Drivers must communicate with dispatch through its headset or earbuds.

30.    In its position statement to the EEOC, Alto describes listening to dispatch through its headset as an essential function.

31.    Alto has denied reasonable accommodations, such as pairing hearing aids to the vehicle's bluetooth or to the driver's company phone, to hard-of-hearing individuals who cannot use the headset because they use hearing aids.

**Alto Denies Employment as Personal Drivers to Qualified Individuals with Hearing Disabilities.**

32.    Alto routinely denies employment as Personal Drivers to qualified individuals with hearing disabilities. For example:

(a)    Charging Party Lula

i.    On March 9, 2022, Charging Party Lula applied to be a Personal Driver at Alto's Alexandria, Virginia location.

ii.    Lula is deaf.

iii.    Lula had prior experience driving for Uber and Lyft and was qualified to be a Personal Driver with Alto.

iv.   After Alto scheduled him for a virtual interview, Lula requested that it provide an American Sign Language ("ASL") interpreter for the interview.

v.   The interview was scheduled for April 5, 2022, at 11:00 a.m.

vi.   On April 5, 2022, at 10:32 a.m., Alto cancelled Lula's interview via email.

vii.   After canceling Lula's interview, Alto told Lula that he could not be a Personal Driver because "[he] would have to communicate via headset with dispatch in order to qualify for this specific position."

viii.   Alto stated in its EEOC position statement that "no reasonable accommodation" can overcome Lula's physical limitation.

ix.   In its EEOC position statement, it also compared Lula applying to be a Personal Driver to a blind person applying to be an airline pilot.

(b) Andrew Word

i.   Andrew Word applied to be a Personal Driver in Alto's Miami, Florida market on March 12, 2023.

ii.   Word had prior driving experience driving for Uber, Lyft, and Amazon and was qualified to be a Personal Driver with Alto.

iii.   Word told Alto he was deaf and requested an ASL interpreter for a video interview.

iv.   During his interview, Alto told Word it was denying his application because he was deaf and would not be able to hear dispatch.

    v.  Word informed Alto there were other methods for him to communicate with dispatch, such as push notifications or text messaging while pulled over.

    vi.  Alto rejected Word's application.

(c) Lee Samson

    i.  Lee Samson applied to be a Personal Driver in Alto's Silicon Valley market on November 6, 2022.

    ii.  Samson had prior driving experience working for Uber and FedEx and was qualified to be a Personal Driver with Alto.

    iii.  Samson is deaf and requested an ASL interpreter for his interview.

    iv.  Samson was denied an ASL interpreter and instead was called over the VRS relay.

    v.  During his interview, Samson told Alto about accommodations he had received at his prior driving jobs such as text messaging and push notifications.

    vi.  Alto rejected Samson's application.

    vii.  When Alto rejected Samson's application, an Alto representative told him: "I have talked to corporate and as of now, we do not have the texting ability on our software system built in yet. This is something that we are working on for the future."

    viii.   This information was incorrect, as Alto had the ability to turn on the texting function on the walkie talkie app used to communicate with

dispatch, and its Personal Drivers are able to text with passengers. Nonetheless, Alto never asked Samson to reapply.

(d) Hafiz Martowidjojo

   i. When Hafiz Martowidjojo, who is deaf, applied for a Personal Driver position for Alto's Houston Market in September 2022, Alto told him that it "require[s] drivers to hear commands from our dispatch team" and rejected his application.

**Alto Denies Reasonable Accommodations to Qualified Individuals with Hearing Disabilities.**

33.    Alto failed to provide reasonable accommodations for deaf applicants for the hiring process for the Personal Driver position. For example:

(a) Charging Party Lula

   i. Charging Party Lula requested an ASL interpreter for his video interview. Rather than accommodating him, Alto terminated his application.

(b) Lee Samson

   i. Samson requested an ASL interpreter for his video interview. Rather than providing him an interpreter, Alto called him over VRS, and he was unable to complete a video interview.

(c) Ronald Smith

   i. Smith applied to be a Personal Driver in Alto's Dallas-Fort Worth, Texas market on September 7, 2022.

   ii. Smith is deaf and is a qualified individual with a disability.

   iii. Smith requested an ASL interpreter for his video interview.

iv. When Smith logged on to the video interview there was no interpreter, and he left the meeting.

v. Smith sent a message to Alto that the video interview did not work for him because of his hearing disability.

vi. Alto never responded and marked Smith as having cancelled the interview.

(d) Jack Rozilio

i. Jack Rozilio applied to be a Personal Driver in Alto's Southern California market on May 5, 2023, and requested an ASL interpreter for his video interview.

ii. Rozilio is deaf and is a qualified individual with a disability.

iii. In response to Rozilio's request, Alto told him that it was working on setting up an interpreter.

iv. Alto did not contact Rozilio again for three months, at which time it still had not arranged for interpreting services.

v. As a result of Alto's treatment of him, it became clear to Rozilio that Alto was not interested in hiring deaf drivers.

34. Alto denies reasonable accommodations to qualified individuals with hearing disabilities that would enable them to work as Personal Drivers. For example:

(a) Tyrone Oraguzie

i. After initially rejecting him after he requested an ASL interpreter for the application process, Alto hired Tyrone Oraguzie, who is deaf, on

9

November 16, 2022 to be a Personal Driver in Alto's Los Angeles, California, market.

ii. Alto hired Oraguzie only after he challenged their rejection of him and asked in a text, "Is it due to my deafness . . . ?"

iii. Oraguzie had experience driving for Uber, Lyft, and UberEats, and was qualified to be a Personal Driver with Alto.

iv. During the new employee training period, Oraguzie twice asked, "I'm curious about the accessibility communications, is it still provided for the Deaf/Hard of Hearing?"

v. Alto responded: "Hi Tyrone, at Alto, our drivers wear a headset to listen to instructions and communicate with our dispatch team."

vi. Oraguzie responded that under the ADA it was mandatory to provide communications-based accommodations.

vii. Alto requested that Oraguzie submit a reasonable accommodations request and a doctor's note.

viii. Oraguzie submitted a doctor's note and requested the reasonable accommodations of a live or virtual interpreter for his training and to communicate with dispatch through text message.

ix. On December 7, 2022, Alto informed Oraguzie that his request for reasonable accommodations was denied and terminated his employment as a Personal Driver.

35.     Instead of accommodating individuals with hearing disabilities in the Personal Driver position, Alto sometimes steers them into the Service Agent position, which is a car washer. For example:

    (a)  Tyrone Oraguzie

        i.  On the same day that Alto terminated Oraguzie as a Personal Driver, it offered him a position as a Service Agent.

    (b)  Heather Royal

        i.  Alto hired Royal as a Personal Driver at its Alexandria, Virginia, location on February 22, 2022.

        ii.  Royal began wearing hearing aids in February 2023.

        iii.  Royal submitted a reasonable accommodation request on February 13, 2023, to pair her hearing aids with her car's bluetooth while driving.

        iv.  Rather than accommodating Royal as a Personal Driver, Alto offered her a position as a Service Agent.

    (c)  Marco Medrano

        i.  When Marco Medrano notified Alto he is deaf, Alto told him, "We may potentially have a service agent position available" even though Medrano had applied for a Personal Driver position in the Southern California market.

36.     Unlike Personal Drivers, Service Agent's base pay does not vary depending on the shift worked and they therefore cannot make more money by taking a different shift.

37.     Unlike the Personal Drivers, Service Agents must perform manual labor outdoors.

38.     Unlike the Personal Driver position, the Service Agent position is not public facing.

**ADA Claims (Counts I-V).**

39.    The EEOC incorporates paragraphs 16 through 38.

40.    At all relevant times, Lula and the other individuals subjected to the employment practices described in paragraphs 16 through 38 were deaf or hard-of-hearing and substantially limited in the major life activity of hearing.

41.    At all relevant times, Lula and the other individuals subjected to the employment practices described in paragraphs 16 through 38 were and are qualified individuals with disabilities under 42 U.S.C. § 12102(1)(A).

42.    At all relevant times, Defendant was aware of these disabilities.

43.    At all relevant times, Lula and other individuals subjected to the employment practices described in paragraphs 16 through 38 could perform the essential functions of the Personal Driver position with or without reasonable accommodations.

**<u>Count I: Failure to Accommodate</u>**

44.    Since at least September 2021 and continuing to the present, Defendant has engaged in unlawful employment practices in violation of Section 102(b)(5)(A) of the ADA, 42 U.S.C. § 12112(b)(5)(A), against Lula and other deaf or hard-of-hearing Personal Driver applicants and employees.

45.    The unlawful employment practices in Count I include, but are not limited to:

(a)    failing to engage in good faith in the interactive process despite having knowledge of Lula's, and other aggrieved individuals' disabilities and despite the availability of reasonable accommodations; and

(b)    failing to provide Lula, and other qualified individuals with disabilities with reasonable accommodations during the hiring process, including but not

limited to the provision of ASL interpreters and other communications-based accommodations; and

(c)    failing to provide qualified individuals with disabilities with reasonable accommodations to perform the duties of the Personal Driver position, including but not limited to the use of push notifications, or text messages or VRS calls while pulled over to contact dispatch.

46.    The unlawful employment practices contained in Count I were done with malice or with reckless disregard to the federally protected rights of Lula, and other qualified individuals with disabilities.

47.    The unlawful employment practices contained in Count I caused Lula, and other qualified individuals with disabilities emotional and mental anguish, pain and suffering, stress, humiliation, and frustration.

### Count II: Denial of Employment Opportunities Based on Disability and/or the Need to Make Reasonable Accommodations

48.    The EEOC incorporates paragraphs 16 through 47.

49.    Since at least September 2021 and continuing to the present, Defendant has engaged in unlawful employment practices against Lula and other qualified deaf and hard-of-hearing Personal Driver applicants and employees, in violation of Section 102 (b)(5)(B) of the ADA, 42 U.S.C. § 12112(b)(5)(B).

50.    The unlawful employment practices in Count II include, but are not limited to:

(a) Failing to hire qualified deaf and hard-of-hearing applicants to the Personal Driver position because of the need to make reasonable accommodations for their disability; and

(b) Wrongfully terminating deaf and hard-of-hearing Personal Drivers because of the need to make reasonable accommodations for their disability.

51.    The unlawful employment practices contained in Count II were done with malice or with reckless disregard to the federally protected rights of Lula and other qualified individuals with disabilities.

52.    The unlawful employment practices contained in Count II caused Lula and other qualified individuals with disabilities emotional and mental anguish, pain and suffering, stress, humiliation, and frustration.

### Count III: Failing to Hire Because of Disability

53.    The EEOC incorporates paragraphs 16 through 52.

54.    Since at least September 2021 and continuing to the present, Defendant discriminated against deaf Personal Driver applicants by failing to hire them because of their disability, in violation of Section 102(a) of the ADA, 42 U.S.C. § 12112(a).

55.    The unlawful employment practices in Count III include, but are not limited to, failing to hire qualified deaf Personal Driver applicants because of their disability.

56.    Defendant's discriminatory treatment of deaf Personal Driver applicants was done with malice or reckless indifference to their federally protected rights.

57.    The effect of the policies complained of in the paragraphs 16 through 56 has been to deprive a group of qualified aggrieved individuals of employment opportunities because of their disabilities.

58.    The unlawful employment practices contained in Count III caused Lula and other qualified individuals with disabilities emotional and mental anguish, pain and suffering, stress, humiliation, and frustration.

**Count IV: Wrongful Termination**

59.     The EEOC incorporates paragraphs 16 through 58.

60.     Since at least September 2021 and continuing to the present, Defendant discriminated against deaf and hard-of-hearing Personal Drivers by terminating them because of their disability, in violation of Section 102(a) of the ADA, 42 U.S.C. § 12112(a).

61.     The unlawful employment practices in Count IV include, but are not limited to, terminating deaf and hard-of-hearing Personal Drivers because of their disability.

62.     Defendant's discriminatory treatment of deaf and hard-of-hearing Personal Drivers was done with malice or reckless indifference to their federally protected rights.

63.     The effect of the policies complained of in the paragraphs 16 through 62has been to deprive a group of qualified aggrieved individuals of employment opportunities because of their disabilities.

64.     The unlawful employment practices contained in Count IV caused qualified individuals with disabilities emotional and mental anguish, pain and suffering, stress, humiliation, and frustration.

**Count V: Limiting, Segregating, or Classifying Qualified Individuals Because of Disability**

65.     The EEOC incorporates paragraphs 16 through 64.

66.     Since at least September 2021 and continuing to the present, Defendant discriminated against deaf and hard-of-hearing Personal Driver applicants and employees by limiting, segregating, or classifying them in a way that adversely affected their opportunities or status because of their disability, in violation of Section 102(b)(1) of the ADA, 42 U.S.C. § 12112(b)(1).

67.    The unlawful employment practices in Count V include, but are not limited to, limiting, segregating, or classifying deaf and hard-of-hearing Personal Driver applicants and employees as car washers or Service Agents.

68.    Defendant's discriminatory treatment of deaf and hard-of-hearing Personal Driver applicants and employees was done with malice or reckless indifference to their federally protected rights.

69.    The effect of the policies complained of in the paragraphs 16 through 68 has been to deprive a group of aggrieved individuals of employment opportunities because of their disabilities.

70.    The unlawful employment practices contained in Count V caused Lula and other qualified individuals with disabilities emotional and mental anguish, pain and suffering, stress, humiliation, and frustration.

## VI.    <u>PRAYER FOR RELIEF</u>

Wherefore, Plaintiff respectfully requests that this Court:

A.    Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in disability discrimination, and engaging in any other employment practices that discriminate on the basis of disability or protected activity.

B.    Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities and reasonable accommodations for qualified individuals with disabilities, and that eradicate the effects of its past and present unlawful employment practices.

C.     Order Defendant to offer employment as a Personal Driver to any individual subjected to any violation set forth in Counts II–V, or to provide front pay in lieu thereof.

D.     Order Defendant to make whole Lula and all other individuals subjected to any violation set forth in Counts II–V by providing appropriate back pay, including all forms of compensation and lost benefits, with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to the instatement, reinstatement, or front pay in lieu thereof.

E.     Order Defendant to make whole Lula and all other individuals subjected to any violation set forth in Counts II–V by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above in amounts to be determined at trial.

F.     Order Defendant to make whole Lula and all other individuals subjected to any violation set forth in Counts I–V by providing compensation for past and future non-pecuniary losses resulting from Defendant's unlawful employment practices, including emotional and mental anguish, pain and suffering, stress, humiliation, and frustration in amounts to be determined at trial.

G.     Order Defendant to pay Lula and all other individuals subjected to any violation set forth in Counts I–V punitive damages for the malicious and/or reckless conduct described above, in amounts to be determined at trial.

H.     Grant such further legal or equitable relief as the Court deems necessary and proper to the public interest.

I.     Award the EEOC its costs of this action.

## VII. JURY TRIAL DEMAND

The EEOC requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

KARLA GILBRIDE
General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

GWENDOLYN REAMS
Associate General Counsel

/s/ Debra M. Lawrence
DEBRA M. LAWRENCE
Regional Attorney
Maryland Bar No. 04312

/s/ Maria Luisa Morocco
MARIA LUISA MOROCCO
Assistant Regional Attorney
EEOC
Washington Field Office
131 M Street, N.E., Suite 4NWO2F
Washington, D.C. 20507
maria.morocco@eeoc.gov
Phone: 202-419-0724
Virginia Bar No. 94043

/s/ R. Sam Wallace
R. SAM WALLACE
Trial Attorney
EEOC
Philadelphia District Office
801 Market St., Suite 1300
Philadelphia, PA 19107
sam.wallace@eeoc.gov
Phone: 267.589.9762
Fax: 215.440.2848

Date: December 6, 2024